**UNITED STATES of America,
Plaintiff,**

v.

**Jeremiah C. TUSH, Defendant.**

No. 99–20012–01–KHV.

United States District Court,
D. Kansas.

Feb. 2, 2001.

Jeremiah C. Tush, El Reno, OK, pro se.

Leon J. Patton, Office of U.S. Atty., Kansas City, KS, for U.S.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendant's Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. # 31) filed October 17, 2000. For reasons set forth below, defendant's motion is overruled.

### Factual Background

On February 18, 1999, a grand jury returned a three-count indictment. Count 1 charged defendant with arson of real property (the Sunflower Army Ammunition Plant) owned and possessed by the United States in violation of 18 U.S.C. § 844(f)(1). Count 2 charged defendant with arson of a building (the Full Gospel Tabernacle church in DeSoto, Kansas) used in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i). Count 3 charged defendant with unlawful possession of a firearm by a convicted felon.

Defendant pled guilty to Count 2. In the plea agreement, defendant agreed that the evidence would "show that the [Full Gospel Tabernacle] church was used in an activity affecting interstate commerce, since the church hymnals and Sunday School materials which the church uses are purchased from businesses in Missouri and Tennessee, and the church has visitors who reside out of state." Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. # 26) filed April 19, 1999.

On July 19, 1999, the Court sentenced defendant to a term of imprisonment of 60 months. The Court also sustained the government's motion to dismiss Counts 1 and 3 of the indictment.

On October 17, 2000, defendant filed the instant motion pursuant to 28 U.S.C. § 2255. Defendant claims that his conviction should be vacated in light of the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). In particular, defendant argues that the Court did not have jurisdiction to accept his plea or sentence him because the Full Gospel Tabernacle church was not used in an activity affecting interstate commerce as required by 18 U.S.C. § 844(i).

## Analysis

### I. Procedural Bar

#### A. Statute Of Limitations

Section 2255 provides a one-year period of limitation for motions brought under that section. 28 U.S.C. § 2255. The limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Because defendant did not file a direct appeal, his conviction was final on August 5, 1999—ten days after judgment was entered. Accordingly, under subsection (1), defendant had until August 5, 2000 to file a motion to vacate, set aside or correct his sentence. Defendant filed his motion on October 17, 2000, over two months beyond the deadline set forth in subsection (1).

Defendant maintains that his motion is timely under subsection (2). Defendant argues that prior to the Supreme Court's ruling in *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), he was under an impediment to file his motion. The Court disagrees. Any such impediment was not created by "governmental action in violation of the Constitution or laws of the United States" as required by subsection (2). 28 U.S.C. § 2255(2).

The Court finds, however, that defendant's motion is timely under subsection (3). In Jones, the Supreme Court recognized for the first time that receipt of natural gas, a mortgage or an insurance policy from out-of-state sources is insufficient to satisfy the interstate commerce requirement of section 844(i). See 120 S.Ct. at 1910. Jones emphasized that the building must be actively employed for commercial purposes, and "a passive, passing, or past connection to commerce" is insufficient. *Id.* Prior to Jones, several circuits had held that a passive connection between a building and interstate commerce was sufficient to support a convic-

tion under section 844(i). See, e.g., *United States v. Rea*, 169 F.3d 1111, 1113–14 (8th Cir.1999) (church annex covered where it utilized Sunday School materials and natural gas purchased from out-of-state sources), vacated, 530 U.S. 1201, 120 S.Ct. 2193, 147 L.Ed.2d 230 (2000) (vacated and remanded based on Jones), reversed and remanded, 223 F.3d 741 (8th Cir.2000); *United States v. Hicks*, 106 F.3d 187, 189 (7th Cir.) (restaurant had fire insurance written by two out-of-state companies, obtained natural gas from out of state, and received food from out of state), *cert. denied*, 520 U.S. 1258, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997); *United States v. Ramey*, 24 F.3d 602, 607 (4th Cir.1994), *cert. denied*, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995) (trailer's receipt of electricity from interstate power grid sufficient to satisfy jurisdictional requirement of section 844(i)), post conviction relief denied, 10 F.Supp.2d 599 (S.D.W.Va.1998), vacated, 217 F.3d 842, 2000 WL 790959 (4th Cir.2000) (vacated based on Jones); *United States v. Utter*, 97 F.3d 509, 516 (11th Cir.1996) (restaurant covered because it served alcohol and used natural gas, both of which originated out of state, and offered to serve interstate travelers); *United States v. DiSanto*, 86 F.3d 1238, 1248 (1st Cir.1996) (in dicta, noting that restaurant was used in interstate commerce because it received food supplies and natural gas from outside state), *cert. denied*, 520 U.S. 1105, 117 S.Ct. 1109, 137 L.Ed.2d 310 (1997). But *cf. United States v. Corona*, 108 F.3d 565, 570 (5th Cir.1997) (questioning whether single factor of obtaining natural gas service from out of state for use in single residential household satisfies constitutional requirement); *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir.1995) (receipt of natural gas from out-of-state sources insufficient). Accordingly, in Jones, the Supreme Court recognized a "new right" within the meaning of section 2255(3). See

*Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir.2000) (finding that *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) recognized new right within meaning of section 2255(3) because defendant for first time was free of criminal liability under section 924(c)(1) for conduct that had previously supported conviction in nearly every circuit).

## B. Whether Defendant's Claim Is Precluded By Teague

■ The government argues that even if Jones announced a new rule of criminal procedure, it should not apply to cases on collateral review. Under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), only "watershed" constitutional rules of criminal procedure may be applied retroactively to cases on collateral review. *Id.* at 311, 109 S.Ct. 1060. A rule that qualifies under the "watershed" exception "must not only improve accuracy, but also 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. 1060).

■ Teague does not bar defendant's motion in this case. Teague applies only to new procedural rules, and "it is inapplicable to the situation in which th[e Supreme] Court decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A defendant may challenge the validity of a plea agreement based on a decision of the Supreme Court holding that a substantive federal criminal statute does not reach certain conduct. See *id.* In *United States v. Ryan*, 227 F.3d 1058 (8th Cir.2000), the Eighth Circuit held that Jones may be applied retroactively to cases on collateral review. *Id.* at 1062–63. In a similar context, the Tenth Circuit held

that the Supreme Court's decision in Bailey, *supra,* which defined the substantive reach of 18 U.S.C. § 924(c)(1), could be applied retroactively to cases on collateral review. See *United States v. Barnhardt,* 93 F.3d 706, 708 (10th Cir.1996). For these reasons, Teague does not bar defendant's collateral attack on his sentence.

## C. Failure To Raise Claim On Direct Appeal

■ The government next argues that defendant's claims are procedurally barred because he failed to raise them on direct appeal. "[Section] 2255 is not available to test the legality of matters which should have been raised on appeal." *United States v. Allen,* 16 F.3d 377, 378 (10th Cir.1994) (quoting *United States v. Walling,* 982 F.2d 447, 448 (10th Cir.1992)). "Nevertheless, a statutory requirement that an activity be 'in or affecting interstate commerce' is both jurisdictional and an essential element of the charge, and challenges to jurisdiction may be raised for the first time on collateral review." *United States v. Swapp,* 198 F.3d 260, 1999 WL 989336, at *2 n. 1 (10th Cir. Oct.29, 1999) (citations omitted); see *United States v. Kunzman,* 125 F.3d 1363, 1364–65 (10th Cir.1997) (treating challenge to interstate commerce element of statute as jurisdictional, thus not procedurally barred), *cert. denied,* 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 523 (1998); *United States v. Cook,* 997 F.2d 1312, 1320 (10th Cir.1993) ("jurisdictional issues are never waived and can be raised on collateral attack."). Defendant therefore may challenge the validity of his plea agreement in this proceeding.

## II. Whether Defendant Is Entitled To Relief Under Jones

■ The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See *Klein v. United States,* 880 F.2d 250, 253 (10th Cir.1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

■ The federal arson statute provides penalties for "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). In *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), the Supreme Court noted that Congress intended to exercise its full power under the Commerce Clause. See *id.* at 860, 105 S.Ct. 2455. "Moreover, after considering whether the bill as originally introduced would cover bombings of police stations or churches, the bill was revised to eliminate the words 'for business purposes' from the description of covered property." *Id.* at 860–61, 105 S.Ct. 2455. Thus, Congress intended to cover churches under the terms of section 844(i). See *Swapp,* 1999 WL 989336, at *3; see also *Russell,* 471 U.S. at 861, 105 S.Ct. 2455 ("the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property [such as police stations and churches] that might not fit that description, but perhaps not every private home.")

In Jones, the Supreme Court noted that the word "used" in the statute demonstrates that Congress had not invoked its full authority under the Commerce Clause.[1] The Supreme Court stated that

---

1. Although the holdings in Russell and Jones are consistent, the Court cannot fully reconcile the statements made in the two cases

the proper inquiry "is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Id.* at 1910 (quoting *United States v. Ryan,* 9 F.3d 660, 675 (8th Cir.1993) (Arnold, C.J., concurring in part and dissenting in part)). Jones emphasized that the building must be actively employed for commercial purposes, and "a passive, passing, or past connection to commerce" is insufficient. *Id.* at 1910. Based on this test, the Supreme Court held that "an owner-occupied residence not used for a commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity." *Id.* at 1908. The Court noted that it is not the common perception that a private home is "used" in any commercial activity. See *id.* at 1910. It also noted that receipt of natural gas, a mortgage or an insurance policy from out-of-state sources is insufficient to satisfy the interstate commerce requirement of section 844(i). See *id.*

Recently, the Tenth Circuit examined the scope of Jones. See *United States v. Grassie,* 237 F.3d 1199 (10th Cir.2001). The Tenth Circuit noted:

The Court [in Jones] expressed no view on the "de minimis" standard for effects on interstate commerce. Its focus was on active use versus passive or passing relationship to commerce. The Court required only "active employment" which affects commerce, not a particular quantum of effect.

Indeed, the Court relied upon its prior decision in *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), where once the use of a building for rental purposes was established, the

effect on commerce was simply presumed because of the nature of the activity. In other words, it was not necessary to show dollar amounts, dollar tracing, individual conduct or any other nexus between the two rental units in question and interstate commerce. Clearly, the dollar amount or activity involved in Russell was trivial as a proportion of commerce in rental properties, or all commerce, nationally; but that was not significant because of the nature of the activity in the aggregate.

\* \* \* \* \* \*

As to § 844(i), rather than contradicting our controlling precedent, the Court in Jones confirmed it, citing with approval our opinion in *United States v. Monholland,* 607 F.2d 1311 (10th Cir.1979). See *Jones,* 120 S.Ct. at 1911. In Monholland we focused on the "use" language of § 844(i) and employed a functional analysis to conclude that a truck the defendants conspired to blow up was not actively used in interstate commerce, resulting in a dismissal of the charges. *Monholland,* 607 F.2d at 1316. We also recognized the propriety of the "de minimis" standard in jury instructions on 844(i), but we essentially employed the same approach as that in Jones in holding that when no connection at all is made between actual use and interstate commerce, the de minimis standard approved by this circuit is not met. We did not invalidate the standard and we do not believe Jones did.

*Id.* at 1208.

In Grassie, a Latter-day Saints church contained a "chapel, multi-cultural hall (in-

regarding Congress' intent under section 944(i). Compare *Jones,* 120 S.Ct. at 1909 (because Congress used the qualifying words "used in" a commerce-affecting activity, the Supreme Court rejected the government's contention that Congress intended to invoke its full authority under the Commerce Clause)

with *Russell,* 471 U.S. at 860, 105 S.Ct. 2455 ("The reference to 'any building ... used ... in any activity affecting interstate or foreign commerce' expresses an intent by Congress to exercise its full power under the Commerce Clause.").

cluding a gymnasium for basketball and other social and recreational activities), classrooms for religious instruction, nursery, kitchen, relief society (women's organization) room, library containing equipment and teaching materials, baptismal center, primary (children's) room, high council room, multiple offices for the bishops and officers administering the affairs of each ward, offices for the stake president, and a family history center for genealogy work." *Id.* at 1203. Also, the church was open to the public including those traveling interstate and seeking a meeting house on Sundays. See *id.* The Tenth Circuit held that the evidence at trial, including a stipulation by the parties, supported the conclusion that the church at issue was actively used for commercial purposes. See *id.* at 1208. It also held that "the jury instructions which incorporated an 'any effect at all' standard were not erroneous in view of the fact that the 'active use' portion of the inquiry was satisfied." *Id.* Finally, it held that the definition of commerce includes churches. See *id.* at 1209–10; see also *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 584, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (Commerce Clause applies to charitable and non-profit entities).

In Grassie, the Tenth Circuit also addressed whether the government presented sufficient evidence to sustain a conviction for the burning of a truck used in an activity affecting interstate commerce. The truck, which was owned by Norman Jensen, was used primarily for personal purposes. The truck's only active connection with interstate commerce was that several times each year Jensen transported pecans for his landlord approximately two miles to a broker. The evidence established that the broker sold the pecans in interstate commerce and passed on a share of the profit to the landlord. See *id.* at 1212. The Tenth Circuit held that such evidence was sufficient for a reasonable

jury to find that the interstate commerce element of § 844(i) was satisfied. It noted that "[t]he duration and continuity, over a period of years, of this commercial use of [the] truck, overcomes the fact that the use was largely seasonal." *Id.* at 1212.

■ As explained above, defendant admitted in the plea agreement that the evidence would "show that the [Full Gospel Tabernacle] church was used in an activity affecting interstate commerce, since the church hymnals and Sunday School materials which the church uses are purchased from businesses in Missouri and Tennessee, and the church has visitors who reside out of state." Based on the reasoning of Jones, defendant's plea cannot be upheld solely on the fact that the church purchased supplies from out of state. See *United States v. Rea,* 223 F.3d 741, 743 (8th Cir.2000) ("Clearly, our reliance in Rea I on the Church's use of materials purchased in interstate commerce and its use of natural gas from an out-of-state source is an insufficient basis for a finding that the Church annex was 'used in' a commerce affecting activity under § 844(i).").

The closer question is whether the fact that the Full Gospel Tabernacle church has out-of-state visitors is sufficient. Under the Jones functionality test, the Full Gospel Tabernacle church functions as a place of worship. That function in turn affects interstate commerce in part because out-of-state visitors attend the church. The plea agreement does not specify the number or frequency of such visitors. Unlike an owner-occupied private residence, however, most churches are open to out-of-state visitors on a weekly basis. See *United States v. Harris,* 221 F.3d 1048, 1050 (8th Cir.2000) ("neither [defendant] nor the government questioned the constitutionality of § 844(i) as applied to churches. We therefore decline to pursue the constitutional argument fur-

ther since the [Supreme] Court [in Jones] has not cast aspersions upon the constitutional application of § 844(i) to places of worship.") (citing *Russell v. United States*, 471 U.S. 858, 860–61, 860 n. 6, 105 S.Ct. 2455, 85 L.Ed.2d 829, (1985), which recognized that Congress intended to apply § 844(i) "to the bombings of churches, synagogues, or religious edifices"). Several courts have held that a restaurant or other building which offers to serve interstate travelers is covered under section 844(i). See *U.S. v. Chowdhury*, 118 F.3d 742 (11th Cir.1997) (new restaurant covered under § 844(i) in part because it would have been available to serve interstate travelers); *Utter*, 97 F.3d at 516 (restaurant covered in part because it offered to serve interstate travelers); see also *Katzenbach v. McClung*, 379 U.S. 294, 304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) ("Congress acted well within its power to protect and foster commerce in extending the coverage of Title II only to those restaurants offering to serve interstate travelers or serving food, a substantial portion of which has moved in interstate commerce"); *United States v. Sherlin*, 67 F.3d 1208, 1213 (6th Cir.1995) (college dormitory covered under § 844(i) in part because college had out-of-state students), *cert. denied*, 516 U.S. 1082, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996); *United States v. Menzer*, 29 F.3d 1223, 1230 (7th Cir.) (building covered in part because first two floors of building were an art gallery and souvenir business which served customers from outside the state), *cert. denied*, 513 U.S. 1002, 115 S.Ct. 515, 130 L.Ed.2d 422 (1994). Nothing in Jones suggests that the reasoning of these cases is flawed. For purposes of satisfying the interstate commerce element of section 844(i), the Court sees very little practical distinction between a restaurant which is available to interstate travelers and a church which is open to out-of-state guests. The definition of commerce includes the activities of both restaurants and churches. See *Grassie*, 237 F.3d at 1209–10. Very few out-of-state guests may actually attend services at the Full Gospel Tabernacle church, but the fact that the church has some out-of-state guests shows that it is actively employed or used in an activity affecting interstate commerce.[2] As explained in Grassie, no particular quantum of effect is required. See *id.* at 1208. For these reasons, the Court finds that it had jurisdiction under section 944(i) to accept defendant's plea and sentence him. Defendant's motion to vacate his sentence is therefore overruled.

The files and records in this case conclusively show that defendant is not entitled to any relief. Accordingly, no evidentiary hearing is required. No hearing is required where the factual matters raised by defendant's Section 2255 petition may be resolved on the record before the Court. See *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir.1988).

**IT IS THEREFORE ORDERED** that defendant's Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. # 31) filed October 17, 2000 be and hereby is **OVERRULED.**

2. In *United States v. Joyner*, 201 F.3d 61 (2d Cir.2000), the Second Circuit adopted a per se rule that restaurants are covered under section 844(i). See *id.* at 79 (absence of evidence regarding connection between restaurant and interstate commerce not fatal because jury could properly conclude that restaurant was part of broader restaurant market connected to interstate commerce). In this case the parties have stipulated that the Full Gospel Tabernacle church had out-of-state guests. Therefore the Court need not decide if a per se rule should be applied to churches.